IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
AKEVA L.L.C.,                    )
                                 )
     Plaintiff,                  )
                                 )
          v.                     )     1:03CV01207
                                 )
aDIDAS AMERICA, INC.,            )
                                 )
     Defendant.                  )
```

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

In this patent infringement action relating to the technology of athletic shoes, the court now reconsiders its Memorandum Opinion and Order of May 17, 2005 (the "Claim Construction Order"), in light of the recent en banc opinion of the Federal Circuit Court of Appeals in Phillips v. AWH Corporation, 415 F.3d 1303 (Fed. Cir. 2005). The court also herein considers Plaintiff's Motion for Partial Reconsideration of the Court's Claim Construction Order and Memorandum in Support Thereof. For the reasons stated below, the court will reaffirm its prior ruling and will deny Plaintiff's motion.

I.  **BACKGROUND**

On May 17, 2005, this court issued the Claim Construction Order that construed the disputed claim terms. The Claim Construction Order construed all terms to have their plain and

ordinary meaning, with one exception. The term "secured" in both United States Patent No. 6,604,300 ("'300 Patent") and United States Patent No. 6,662,471 ("'471 Patent") was held to have a meaning more restrictive than its plain and ordinary meaning. The court found language in the specifications of the '300 and '471 Patents that disavowed or disclaimed claim scope, limiting the definition of the word "secured."

Plaintiff now asks the court to reconsider its ruling and to construe the term "secured" in both patents according to its plain and ordinary meaning. In addition, the Federal Circuit has since issued an en banc opinion in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), that clarifies several aspects of claim construction doctrine on which the court relied in its analysis, requiring that the court review its ruling. See also Phillips v. AWH Corp., 376 F.3d 1382 (Fed. Cir. 2004) (order granting rehearing en banc). The parties have submitted briefs discussing the impact of Phillips on the court's claim construction ruling.

The court will first address Phillips, and then will address Plaintiff's motion.

## II. PHILLIPS V. AWH CORPORATION

In relevant part, the Federal Circuit's discussion in Phillips clarifies the role of intrinsic and extrinsic evidence, especially dictionaries and the specification, in defining the

2

scope of a patent's claims. In addition to reaffirming the principles established in Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996), Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996), and Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111 (Fed. Cir. 2004), the court realigned its method of analysis to downplay the role of dictionaries. Phillips v. AWH Corp., 415 F.3d 1303, Nos. 03-1269, 03-1286, slip op. at 7-8 (Fed. Cir. Jul. 12, 2005).[1]

The Federal Circuit reiterated that the claims define the patentee's property rights and should be at the center of any claim construction analysis. Id. at 12. Additionally, the court emphasized that the meaning of claim terms must be ascertained from the point of view of one skilled in the art. Id. at 9. A court should begin its claim construction analysis from the "objective baseline" of the ordinary and customary meaning that a person skilled in the art would understand a claim term to have. Id. A court should also assume that a person skilled in the art would read the claims "in the context of the entire patent, including the specification." Id. at 10.

The specification is a statutory requirement, and the law requires that it "contain a written description of the

---

[1] The page numbers cited for Phillips v. AWH Corp. will refer to the pagination in the slip opinion.

3

invention . . . in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112, ¶ 1. Thus, "the specification necessarily informs the proper construction of the claims." Phillips, Nos. 03-1269, 03-1286, slip op. at 15. It is "entirely appropriate," then, for a court to "rely heavily" on the written description when construing claim terms. Id. at 16.

The Federal Circuit points to two ways in which the specification may limit the scope of claim terms. First, the patentee may have directed a special definition for a claim term. Id. In this case, the patentee's lexicography will control the meaning of the term or terms. Id. Second, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor." Id. In this situation, the "inventor's intention, as expressed in the specification, is regarded as dispositive." Id. (citing SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)).

The Phillips opinion also reiterates that the prosecution history is a useful source of information regarding how the Patent and Trademark Office and the inventor understood the invention. Id. at 17. In addition to reviewing the specification, a court may look to whatever portions of the prosecution history are in evidence. Id. This information is

4

often less useful, however, because it tends to be less clear than the specification or even ambiguous.  Id.  To the extent it shows the inventor's understanding and whether the inventor limited the scope of the patent during prosecution, it may be helpful.  Id.

With regard to extrinsic evidence (i.e., evidence outside the patent and its prosecution history), the Federal Circuit again indicated that district courts should place limited emphasis on it.  This type of evidence, including dictionaries, can be used to aid the court's understanding of the field of the invention and the underlying technology.  Id. at 18.  Dictionaries, in particular, may be used to "assist the court in determining the meaning of particular terminology to those of skill in the art of the invention."  Id. at 19.  In general, however, extrinsic evidence is less reliable than intrinsic evidence and should be used only "in the context of the intrinsic evidence."  Id. at 21.  Because extrinsic evidence is not part of the patent and was not produced "for the purpose of explaining the patent's scope and meaning," it may have been created for a different audience, have the potential for bias, be misleading, and pose the risk of contradicting or undermining the public record of the patent.  Id. at 20.

Generally, the specification and prosecution history should take precedence over dictionaries.  In Texas Digital Systems,

5

Inc. v. Telegenix, Inc., the Federal Circuit previously described dictionaries and similar technical sources as "particularly useful resources" for courts in determining the ordinary meaning of a claim term, and recommended consulting a dictionary as the first step in claim construction – before consulting the written description or prosecution history. 308 F.3d 1193, 1202 (Fed. Cir. 2002). In Phillips, the court explained that the methodology it set out in Texas Digital was focused on helping courts avoid "one of the cardinal sins of patent law – reading a limitation from the written description into the claims." Phillips, Nos. 03-1269, 03-1286, slip op. at 22 (quoting SciMed, 242 F.3d at 1340). The result, however, "improperly restrict[ed] the role of the specification in claim construction." Id. at 24. To avoid focusing the inquiry on the abstract definition of words from a dictionary, the Phillips court encouraged more focus on the claim terms in the context of the specification. Id. at 25. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Id.

The Phillips opinion noted that the duty of the patentee was to understand and describe his invention. Dictionary definitions are supposed to be broad and expansive, but a patent applicant must be more precise. Id. at 26. Because the patentee did not create the dictionary for the purpose of describing the

6

invention, there could be a conflict between "the patentee's responsibility to describe and claim his invention[] and the dictionary editors' objective of aggregating all possible definitions for particular words." Id. at 25. The court showed concern that the use of broad dictionary definitions as the first step in claim construction had led to "unduly expansive" constructions of claim terms, extending patent protection "beyond what should properly be afforded by the inventor's patent." Id. at 26. This "risk of systematic overbreadth" could be substantially corrected if the analysis began, instead, with the claims, specification, and prosecution history. Id.

While the Federal Circuit discussed various weaknesses of dictionaries and technical treatises in construing patent claims, it also made clear that these sources "are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme Court in claim interpretation." Id. at 28. They have the advantage of being unbiased and accessible to the public prior to litigation. Id.

Finally, the opinion cautions that courts should watch the often difficult line between construing the terms in light of the specification and importing limitations from the specification. Id. Courts should keep their focus on "understanding how a person of ordinary skill in the art would understand the claim terms." Id. at 29.

7

In realigning its claim construction analysis, the Federal Circuit stated that "there is no magic formula or catechism." Id. at 30. "The sequence of steps used by the judge" will not matter so long as the court "attach[es] the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Id. at 31.

Having summarized the relevant discussion from the Phillips opinion, the court now must reassess its prior ruling to determine whether the Federal Circuit's renewed focus on intrinsic evidence, especially on the terms and specification, requires a fresh look at the disputed terms. The court will only reconsider its ruling as to claim terms that were disputed by the parties.

**A. "Secured"**

The most debated term at issue in this case is the term "secured" found in both the '300 and '471 Patents. This is the only claim term not given its plain and ordinary meaning because the court found language in the specifications of both patents evidencing a clear disavowal of claim scope. The court's construction of "secured" relied heavily on principles established in SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., where the Federal Circuit held that when the specification clearly excludes a particular feature, "that feature is deemed to be outside the reach of the claims of

8

the patent." 242 F.3d at 1341.  This is true even if the claim language, on its own, could otherwise encompass that feature. Id.

The Phillips court reaffirmed SciMed, stating that an inventor's disclaimer or disavowal of claim scope is one way in which the specification may limit the meaning of claim terms. Phillips, Nos. 03-1269, 03-1286, slip op. at 16.  Thus, the principle of disclaimer or disavowal on which this court relied in its Claim Construction Order remains alive.  Further, the renewed emphasis on the specification, over and above the prosecution history, dictionaries, and other evidence, lends strong support to the notion that a disclaimer or disavowal found in the specification cannot be ignored in construing claim terms. The court sees no need to alter its construction of "secured" in light of Phillips.

Akeva argues in its Phillips brief that the court's ruling improperly limited the patent's scope to one or more embodiments described in the specification.  (Pl.'s Mem. Law Concerning Impact Phillips v. AWH Corp. Matter at 3-4.)  However, Plaintiff mischaracterizes the nature of the court's ruling.  The court did not find any implicit limitation of the term "secured" based on a lack of information about other possible forms, but rather found an explicit disavowal of a permanently positioned rear sole by express language in the '300 Patent and of a permanently attached

9

rear sole by express language in the '471 Patent. (Mem. Op. & Order of May 17, 2005 at 25, 28.)

Plaintiff further argues that the court's erroneous limitation of the term "secured" is evidenced by the fact that such limitation would render claim language found in related patents to be superfluous. (Pl.'s Mem. Law Concerning Impact Phillips v. AWH Corp. Matter at 3-4.) The Federal Circuit has cited the principle that a court should normally construe the same terms consistently across patents created from the same parent application when they share a single written description. See, e.g., NTP, Inc. v. Research in Motion, Inc., No. 03-1615, 2005 WL 1806123, ___ F.3d ___ (Fed. Cir. Aug. 2, 2005). In regard to the '471 Patent and its parent application, Patent No. 5,806,210 (the "'210 Patent"), the patents share the same written description, and the written description of the '210 Patent includes the same language of disavowal that is present in the '471 Patent: "[I]n a radical departure from conventional shoes, the shoe of the present invention incorporates a heel structure, including a detachable rear sole, that significantly alleviates heel wear problems associated with conventional soles and provides enhanced cushioning and/or spring." '210 Patent, col. 4, ll. 51-56 (emphasis added). The '210 Patent is not at issue in this litigation, and the court will not address whether this language creates an express disclaimer of claim scope in that

10

patent. For the purposes of this litigation, the disclaimer in the '471 Patent is not per se inapplicable to the same language found in other, related patents that use the same written description. This rule of construction does not require the court to ignore a patent's express disclaimer of claim scope.

Plaintiff next argues that the main thrust of the claims in the patents-in-suit is the so-called "flexible member," which is a distinct feature from the detachable or repositionable sole not claimed in the '300 or '471 Patents. The language of disclaimer on which the court relies relates only to the detachable or repositionable sole, and so, Plaintiff argues, this language should be held inapplicable to the claim terms in these patents. (Pl.'s Mem. Law Concerning Impact <u>Phillips v. AWH Corp.</u> Matter at 5.) The court finds this argument without merit. The court must take the patent as it exists on the public record, and cannot pick and choose which aspects of the written description should apply and which should not. All of the language and figures contained in the specification comprise the "context" of the patent discussed in <u>Phillips</u>, and it must be considered as a whole. <u>Phillips</u>, Nos. 03-1269, 03-1286, slip op. at 10 (stating that a person of ordinary skill "is deemed to read the claim term . . . in the context of the entire patent"). If Plaintiff wished for certain language in the specification to be considered inapplicable to the claims, it should have left that language out

of the specification. Because it remains in the patent, the court must consider it.

Plaintiff's final argument, that the court improperly used the specification to provide "structure" to the term "secured," is also without merit. (Pl.'s Mem. Law Concerning Impact <u>Phillips v. AWH Corp.</u> Matter at 7.) The court's limitation on the term "secured" was not occasioned by the term's lack of structure in the claims, and the court did not find any such problem with the claims. Rather, the court found the explicit language in the specification to be a clear disclaimer or disavowal of claim scope.

The Federal Circuit's en banc opinion in <u>Phillips</u> does not require that this court alter its previous ruling. Therefore, the court reiterates its finding that the language of disclaimer or disavowal of scope in the '300 and '471 Patents, discussed at length in the Claim Construction Order, serves to limit the scope of the term "secured" as discussed in the prior opinion.

**B. The Other Disputed Terms**

The remainder of the disputed terms were given their plain and ordinary meaning by this court, and the analysis appears to remain fully supported after <u>Phillips</u>. The "flexible plate" was given its plain and ordinary meaning after consideration of the written description. (Mem. Op. & Order of May 17, 2005 at 32.) The "direction substantially perpendicular" was given its plain

12

and ordinary meaning after an assessment of the written description and a limited review of the '300 Patent's prosecution history. (Id. at 38, 44.) The terms "concave," "oriented toward a back of the shoe," and "element" were all given their ordinary meaning after assessing the claim terms themselves and the specification. (Id. at 45, 48, 50.) Indeed, the plain and ordinary meaning of the terms was generally not at issue. The parties merely disputed whether this definition should apply in light of other facts.

Although the court relied heavily on dictionary definitions in construing the terms, it attempted to use the dictionary only as a convenient resource to compose the definitions. The use of dictionaries in composing the definitions of nontechnical terms was approved in Phillips. See Phillips, Nos. 03-1269, 03-1286, slip op. at 28 (describing dictionaries as "useful" and stating "we do not intend to preclude the appropriate use of dictionaries"). The Phillips court was concerned, however, with a court beginning its analysis with the dictionary because such definitions are often quite expansive and could give the terms undue breadth. Id. at 26. This court considered several arguments for narrowing the scope of the disputed terms, but found none of them warranted a more restrictive construction. The court believes it attached the appropriate weight to the claims and the specification, and that its use of dictionary

13

definitions was consistent with the patentee's use of the terms within the patent. The terms at issue here were not technical terms subject to any unique definitions in the field of athletic shoe design, and the use of a standard English-language dictionary was appropriate and helpful in composing the claim constructions.

After reviewing the patents-in-suit, the disputed terms, and the Claim Construction Order, the court finds that <u>Phillips</u> would not require any change in the constructions given. Thus, the court reaffirms its prior ruling on the remaining disputed terms.

**III. PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

Before the Federal Circuit issued its <u>Phillips</u> opinion, Plaintiff moved for reconsideration of the Claim Construction Order on a number of grounds. The Claim Construction Order is not a final judgment or order in this case, but is an interlocutory ruling. District courts have the power to reconsider their interlocutory rulings at their discretion until a final judgment has been entered in the case. <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 12, 103 S. Ct. 927, 935 (1983); <u>American Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514-15 (4th Cir. 2003). The Federal Rules of Civil Procedure do not set out any standard for reconsideration of interlocutory orders, but only provide they are "subject to

14

revision at any time before the entry of judgment." Fed. R. Civ. P. 54(b).

Various judicial doctrines, such as the "law of the case," have evolved to guide a court's discretion. Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (internal quotations omitted)). Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions. Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice. See Official Comm., 322 F.3d at 167; United States v. Duke Energy Corp., 218 F.R.D. 468, 474 (M.D.N.C. 2003); Potter v. Potter, 199 F.R.D. 550, 552-53 (D. Md. 2001).

Plaintiff raises several arguments in support of its motion to reconsider. First, it contends that the court should consider a recent statement by the patent examiner of the '300 Patent,

15

stating she construed the term "secured" during the prosecution of this patent to have its plain and ordinary meaning. This statement was made during the prosecution of a later, but related, patent. Presumably, Plaintiff considers this to be additional evidence that was not previously available. Defendant argues, among other things, that this statement is extrinsic evidence and should not be considered by the court.

The court will not consider the examiner's statement as additional evidence because it is extrinsic to the '300 Patent. The intrinsic record is fixed when the patent is granted. Texas Digital, 308 F.3d at 1202; see also Vitronics, 90 F.3d at 1583 ("The claims, specification, and file history . . . constitute the public record of the patentee's claim, a record on which the public is entitled to rely."). Here, the patent examiner made the statement during the prosecution of a different patent nearly two years after the '300 Patent issued. In arguing for relevancy, Akeva cites to Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340 (Fed. Cir. 2004), cert. denied, ___ U.S. ___, 125 S. Ct. 61 (2004), but the Microsoft court did not rely on subsequent statements by the patent examiner. Rather, it relied on the patentee's statements as evidence of how it understood its own invention, and it used these statements to narrow the meaning of the claims. Id. at 1349-50. Here, Akeva attempts to use the examiner's statement to broaden the scope of its claims, a

16

proposition unsupported by the case law Akeva cites.[2] See also Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'") (quoting ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988). As such, the patent examiner's statement will not be considered.

Plaintiff next advances several arguments grounded on the notion that the court committed error in its claim construction analysis. Plaintiff contends that the court either failed to recognize certain aspects of the patent specifications or incorrectly understood the inventions. The asserted errors do not appear to rise to the level of "clear error." Many of the references Akeva cites were discussed in the Claim Construction Order, and other references were available to the court.[3] Akeva's arguments point out, at most, possible errors of analysis

---

[2] The examiner's statement, even if considered, would be unhelpful to the court because it is quite vague. The examiner states that she used the ordinary meaning of "secured," but she does not elaborate on what this "ordinary meaning" was.

[3] The argument that comes closest to an assertion of clear error is that the court failed to understand the '300 Patent discloses two inventions: the claimed rear sole and the claimed flexible plate. The court disagrees with Akeva's notion, although the difference may be one of pure semantics. In the court's opinion, the '300 Patent discloses a single invention, which is a shoe with two features, a rear sole and a flexible plate (with characteristics as claimed).

17

which are better addressed on appeal.  The court will not allow the parties to reargue claim construction.[4]

Because Plaintiff has not advanced any situation compelling the court to reconsider the Claim Construction Order, the court declines to reconsider its opinion further.

**IV. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that after reconsideration of its ruling in light of an intervening change in the law in Phillips v. AWH Corp., the court reaffirms its analysis and the claim constructions in the Memorandum Opinion and Order of May 17, 2005;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Reconsideration of the Court's Claim Construction Order [135] is DENIED.

---

[4] It may be helpful for the court to address one argument made by Plaintiff contending the court failed to recognize an embodiment in which part of the rear sole is permanently fixed in place and part is rotatable or adjustable.  This embodiment is not excluded from the court's construction of "secured" as used in the '300 Patent.  The court construed the term to mean that a rear sole "secured" is one that is "selectively or permanently fastened, but not permanently fixed in position."  (Mem. Op. & Order of May 17, 2005 at 25.)  A rear sole in which only one portion (e.g., the periphery of the sole) can be rotated, moved, removed, or similarly physically adjusted could be encompassed within this definition because the rear sole, as a whole, would not be permanently fixed in position.  The court declines to adjust its construction on this ground.

This the 26th day of August 2005.

_____
United States District Judge